## FOULKES CONTRACTING COMPANY *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

[No. 10,832.    Filed April 21, 1921.]

1. HIGHWAYS.— *Construction.*— *Contractor's Bond.*— *Conditions.*—*Statute.*—Section 7723 Burns 1914, Acts 1905 p. 521, relative to bonds to be furnished by bidders for the construction of gravel roads, makes no provision for, and does not recognize, a proposal bond, but requires the bidder to file a bond with his bid conditioned that he will enter into a contract and faithfully perform the work in accordance with the profile and report, etc., and that he will pay all debts incurred in the course of the work. p. 399.

2. PRINCIPAL AND SURETY.—*Contract of Suretyship.—Prior Oral Agreements.—Merger.*—Where a written application for a bond to accompany a bid for the construction of a road contained an agreement to pay a premium of "$5 for the proposal, $413.50 for the full maintenance and guarantee period, $418.50 annually in advance for the contract bond," until delivery of competent evidence of the surety's discharge from liability, an alleged oral agreement, made prior to the execution of the application, that only a proposal bond and not a construction bond was contemplated was of no effect, since all previous oral negotiations were merged in the written application. p. 399.

3. HIGHWAYS.— *Contractor's Bond.— Release of Surety.— Furnishing New Bond.—Approval by Board of County Commissioners.*—Where a bond of a bonding company submitted under

§7723 Burns 1914, Acts 1905 p. 521, by the successful bidder for a gravel road contract was conditioned for the faithful performance of the work, and payment of all bills for labor, material, etc., the surety was not released from liability on the bond because the contractor treated it as a proposal bond and with the consent of the board of county commissioners subsequently filed a new construction bond which was approved by the board, in lieu of that filed with the bid. p. 401.

From Vigo Superior Court; *John E. Cox,* Judge.

Action by the United States Fidelity and Guaranty Company against the Foulkes Contracting Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*McNutt, Wallace, Harris & Randel,* for appellant.
*Charles S. Batt,* for appellee.

McMAHAN, J.—Complaint by appellee to recover premiums alleged to be due on a surety bond. Appellant, as a prospective bidder, upon the letting of a contract by the board of commissioners of Vigo county, under what is known as the "Three Mile Road Law," made a written application to appellee for a bond to accompany its bid.

This application contained a statement as to appellant's financial condition, information relative to the character, extent and cost of the improvement. Among the questions in the application, one asked whether the bond was a proposal bond and another whether it would operate as the contract bond. The first of these was answered "Yes," while the second was not answered. It also contained an agreement and contract of indemnity, whereby appellant agreed to pay appellee, "in advance, the premium of $5 for the proposal, $413.50 for the full maintenance and guarantee period, $418.50 annually, in advance for the contract bond,   *   *   * such annual payments to be made until it (appellant) shall deliver to said company (appellee) at its home

office in Baltimore, competent written evidence of its discharge from such suretyship and from all liability by reason thereof," and in order to indemnify and save appellee from any loss on account of signing the bond, appellant assigned all the tools, equipment and materials then or thereafter upon the proposed work, including materials purchased therefor, whether on the works, in storage or in transportation and authorizing appellee to take possession thereof if appellant should fail or be unable to complete the work in accordance with the contract, and subrogating appellee to all rights of appellant under the contract.

Appellant thereupon executed the bond with appellee as surety in the penal sum of $90,000, conditioned that if the contract should be let to appellant, it would promptly enter into a contract for said work and should well and faithfully perform and execute the work in all respects according to the plans and specifications and according to the terms of the contract, and that appellant would pay all debts incurred in the prosecution of such work including labor, cost of materials furnished and for boarding the laborers.

This bond dated May 5, 1917, in connection with appellant's bid, was filed with the county auditor, and on May 14, 1917, said bond and appellant's bid were accepted by the board of commissioners, and the contract let to appellant and it thereupon entered into a written contract for the construction of the road.

The complaint, herein, was filed in July, 1918, alleging the above facts, and demanding judgment for the premiums for the first two years.

Appellant filed an answer in two paragraphs, (1) general denial, (2) admitting the execution of the application and bond, and alleging that on May 5, 1917, appellant being about to make a bid for the contract and being required to file with its bid a bond, applied to

appellee for a bond to cover its bid. That owing to the provisions of the law, the bond was required to be double the amount of the bid and to guarantee that appellant would enter into a contract to do the work, and also to construct the work according to the plans and specifications; that, when said application was made it was agreed between appellant and appellee that while said bond should be issued in statutory form covering both a proposal bond and guaranteeing that appellant would enter into a contract if the work were awarded to it, and the construction bond for the performance of the work, it should, in fact, when issued be merely a proposal bond, unless appellant elected to retain the same as a construction bond; that it was agreed that as a proposal bond, appellant should pay appellee $5 and the further sum of $413.50 as a premium for the first year, and for each succeeding year $418.50, if such bond should be used as a construction bond. That it was agreed that if it was not used as a construction bond that the $5 paid should be in full satisfaction. That appellant used said bond as a proposal bond and in June, 1917, the contract being awarded to appellant, it filed a petition with the board of commissioners for leave to file a new construction bond with personal surety, in lieu of the bond signed by appellee, which being granted, a new bond was filed and approved by the board of commissioners and ordered substituted in lieu of the bond which appellee had signed, thereby releasing appellee from further liability; that appellee through its agent, who received the application and executed said bond was notified of said action, and that appellee through said agent ratified the action of appellant in substituting said new bond.

From judgment against it for $832, appellant appeals. The errors assigned are that the court erred in overruling appellant's motion for a new trial. Appel-

lant's contention is that the decision is not sustained by the evidence.

There is no substantial conflict in the evidence except that relating to the agreement concerning the substitution of a construction bond, signed by personal sureties.

Emory Bard, appellant's secretary, testified that on May 5, 1917, when he filed the bid, he asked Mr. Buntin, who is appellee's agent, to prepare a bond, which he did. A few days later this agent asked if appellant was going to use a personal bond, and that the witness told him that he would let him know in a short time. The bill for $5 was paid.

George C. Foulkes, president of appellant, testified that a few days after the application was signed, but after the bid had been accepted and the contract entered into, but before the work was begun, he explained to Mr. Buntin that they had given a personal bond and would not require a surety bond, and asked if Mr. Bard had settled their bill, and was told he had, and that they (appellee's agents) had heard that appellant did not want a bond and that they considered the matter closed. Two or three weeks later a man from Indianapolis came and made a demand for the premium of $413.50, and claimed that appellee could not be released from the bond; that witness told him, appellant did not intend to pay the premium.

Mr. Buntin, appellee's agent who signed the bond, testified that when the application was made out, he did not know whether the bond was to be a proposal bond or a construction bond, that this was the reason for not answering the question, "Is this to be a construction bond?" that the bond was issued pursuant to the application; had no talk with Mr. Bard that the bond was to be merely a proposal bond; learned from Mr. Bard after July 9, 1917, that appellant had procured a per-

sonal bond; had no understanding that this was merely a proposal bond; told appellant it would cost $5 whether the bond was accepted or not; talked with Mr. Foulkes in June about a letter witness had written appellee; that he considered the matter closed when he heard that they were not using the bond as a construction bond.

The application and bond were given pursuant to §7723 Burns 1914, Acts 1905 p. 521, which provides that: "On the day and at the time and place named in the notices the board shall convene in session and shall receive all sealed proposals tendered and shall open the same in the presence of the bidders and shall let the contract for the construction of such road or improvements to the lowest bidder therefor, * * * *Provided:* That with his proposal such bidder shall submit his bond, payable to the state of Indiana, in a penal sum equal to double the sum of his proposal, with good and sufficient sureties to the approval of the board, conditioned for the faithful performance of the work in accordance with the profile and report and the plans and specifications therein set forth, which bond shall be for the benefit of any person or corporation who shall suffer loss or damages by reason of any failure or neglect of such bidder to enter into a proper contract to perform such work or to carry out the same in any particular, or to pay for any labor or material therefor that shall have been furnished either to him or to any sub-contractor, agent or superintendent under him."

Appellant assuming that its special answer stated a good defense, says that having proved the facts alleged therein without any material conflict, the judgment should have been in its favor.

Appellee, however, insists: (1) That the facts pleaded in the answer did not state a good defense even though proved, and (2) that the court having heard the evidence found the facts therein alleged against appel-

NOVEMBER TERM, 1920.        399

Foulkes, etc., Co. v. United States, etc., Co.—75 Ind. App. 393.

lant, and that this court under the well established rule will not weigh the evidence.

The duty of appellant, as a bidder for the contract, was fixed by §7723, *supra*. This section makes no provisions for, and does not recognize any such

1. thing as a proposal bond. The bond required of every bidder and which must be filed with the bid, is one conditioned that the bidder will enter into a contract and will faithfully perform the work in accordance with the profile and report, and the plans and specifications, and pay all debts incurred in the course of the work, including the cost of materials, labor and board of laborers.

It must be kept in mind that this action is grounded on a written contract between appellant and appellee, wherein appellant agreed to pay appellee a premium of $413.50 for the first year and $418.50

2. each year thereafter until "competent written evidence of its discharge from such suretyship and from all liabilities by reason thereof," is delivered to appellee at its office in the city of Baltimore. Appellant does not claim that it has ever furnished appellee with any such evidence of its discharge. The claim is that according to an oral agreement, the application was executed as an application for a "bid bond" and was not delivered as an application for a "construction bond." It is elementary that all previous oral negotiations are merged in the written application. This being true we must look to the writing and to the subsequent transactions in determining the question now before us.

In *American Bonding Co.* v. *Hall* (1914), 57 Ind. App. 523, 106 N. E. 534, the appellees, three in number, having been appointed receivers of the Goodland Bank, in January 1908, gave a joint bond with appellant as surety. Premiums were paid by the receivers for three years, after which, they refused to pay further pre-

miums.    Suit was brought by appellant to recover the
annual premiums due in January, 1911 and 1912, on the
theory that the bond was still in force and effect.    Before
any part of the premium for which suit had been brought
had been earned or accrued, the court entered an order,
wherein it was found that the bond which appellant had
signed was insufficient and not in compliance with the
statute, and ordering the receivers to file their separate
bonds to the approval of the court, which was done and
thereupon the court made an order releasing and discharg-
ing the bonding company from any further liability.    It
was there held that in the absence of a statute authoriz-
ing it to do so, the court had no power to release the
surety on the bond of the receivers after it had been ac-
cepted and approved; and that where such a statute
exists its provisions must be complied with in order to
render the release effective.    In the course of the opin-
ion the court said:    "Appellant takes the position that,
once a bond is given and approved by the court in a
trust of this kind, the beneficiaries of the trust at once
acquire a vested interest in the bond so given and that
the court has no inherent power to release the surety
thereon.    It is asserted that no such power exists in
the court in the absence of a statute conferring it, and
that, where such power is conferred by statute, it must
be exercised in obedience to it and in strict conformity
to its provisions.    The position of the appellant seems
to be amply sustained by authority.    (Citing author-
ities.)    Some of these cases carry the principle further
than others, but they are in accord in holding that a
court had no power to release the sureties on a bond ex-
cept it be done in accordance with the provisions of a
statute conferring such power.    Unless so released a
bond once approved remains operative as a security un-
til its conditions are performed, or its penalty exhausted
or until barred by the statute of limitations.    A court

may require additional bonds whenever necessary for the protection of the trust estate, but upon the giving of a new bond the court has no power to release a bond previously given unless the action is taken pursuant to a statute and in conformity to its terms. All bonds so given are treated as cumulative security." See, also, *Conn* v. *State* (1890), 125 Ind. 514, 25 N. E. 443.

We are not called upon and do not decide any question as to whether appellee or the sureties on the second bond were primarily liable in case of default, no such 3. question is before us and we express no opinion thereon. But we do hold that the appellee was not released from the liability which was incurred by reason of having signed the bond as surety for appellant, and not having been released from such liability it is entitled to collect the premium for the two years mentioned in the complaint.

Judgment affirmed.